**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

PEOPLE OF THE STATE OF NEW YORK, by Letitia James, Attorney General of the State of New York,

Plaintiffs,

v.

3M COMPANY; EIDP, INC.; THE CHEMOURS COMPANY, INC.; THE CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; DUPONT DE NEMOURS, INC.

Defendants.

Civil Action No. 1:26-cv-1401 (BKS/MJK)

**NOTICE OF REMOVAL**

Defendant 3M Company ("3M"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Supreme Court of the State of New York, County of Albany, to the United States District Court for the Northern District of New York. As grounds for removal, 3M alleges as follows:

**PRELIMINARY STATEMENT**

1. The Attorney General of the State of New York (the "State") seeks to hold 3M and other Defendants liable for their alleged conduct in manufacturing, producing, marketing, and selling per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products, which purportedly have resulted in "threats to human health" and alleged contamination of "all natural resources of the State," including "groundwater, surface water, sediments, and soils, as well as the State's fish and wildlife." Ex. A, Compl. ¶¶ 1, 274, 282.

2. However, at least some of the PFAS that plausibly gives rise to the State's claims was released by the use, storage, or disposal of PFAS-containing aqueous film-forming foam

("AFFF") that was manufactured for and sold to the U.S. military and other users by a select group of suppliers (including 3M) in accordance with the military's rigorous specifications ("MilSpec"). AFFF is a PFAS-containing firefighting foam that is highly effective for extinguishing fuel-based fires. Over time, 3M's MilSpec AFFF products have been used by personnel at military facilities (among others) across the United States, including in New York. In fact, the State has filed four previous actions alleging PFAS contamination from AFFF, including two cases that assert claims arising out of the United States' use of AFFF at a total of fifteen military facilities across New York where the State alleges the United States' use of AFFF has caused PFAS contamination of the State's natural resources. *See* Ex. C, Fourth Am. Compl., *State of New York v. 3M Co.*, No. 2:19-cv-01022-RMG (D.S.C); Ex. D, Third Am. Compl., *State of New York v. 3M Co.*, No. 2:19-cv-02607-RMG (D.S.C) (the "Military Site Actions"). Like this action, the State's Military Site Actions broadly seek to require 3M and other defendants "to compensate the State for *all* injuries to, destruction of, or loss of the State's natural resources." Ex. C, Fourth Am. Compl. ¶ 239 (emphasis added); Ex. D, Third Am. Compl. ¶ 87 (emphasis added).

3. Under the federal government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) and as further alleged herein, 3M is not subject to liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product, which 3M made pursuant to reasonably precise federal specifications. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in its entirety to have its federal defense adjudicated in a federal forum. *See Chevron USA Inc. v. Plaquemines Parish, Louisiana*, 608 U.S. ----, 146 S. Ct. 1052, 1057–58 (2026) (internal quotations omitted). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government

otherwise would have performed." *See Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

4. Under substantially similar circumstances, federal courts of appeal have regularly concluded that removal is appropriate where, as here, alleged widespread harm to a state's natural resources and environment was plausibly caused, at least in part, by MilSpec AFFF. *See Maine v. 3M Co.*, 159 F.4th 129, 139 (1st Cir. 2025) (reversing remand after "credit[ing] 3M's theory that PFAS contamination from sources for which 3M admittedly has a federal contractor defense has commingled with and so has become in[di]visible with the PFAS contamination in natural resources and property which are broadly alleged in Maine's statewide non-AFFF Complaint"); *Maryland v. 3M Co.*, 130 F.4th 380, 390 (4th Cir. 2025) (vacating remand where two States pleaded "general PFAS contamination near military bases where 3M alleges it sold Military AFFF," so there was "no trouble considering as plausible 3M's allegations that some of the PFAS contamination at issue even in the non-AFFF complaints may come from [3M's] Military AFFF production"). Indeed, the court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation ("MDL") has previously denied New York's motions to remand in two of the State's AFFF cases,[1] concluding in each case that "New York's claims arise out of AFFF products . . . for which the U.S. military imposes MilSpec standards." Order Denying Remand at 6, *State of New York v. 3M Co.*, No. 2:19-cv-01022-RMG, ECF No. 48 (D.S.C May 4, 2019); Order Denying Remand at 5, *State of New York v. 3M Co.*, No. 2:19-cv-02123-RMG (D.S.C. Sept. 27, 2019).

[1] That State only moved to remand two of its four AFFF cases.

## BACKGROUND

5. The State filed this action on July 9, 2026 in the Supreme Court of the State of New York, County of Albany bearing index number 907879-26.

6. The State alleges that Defendants, including 3M, have caused harm to New York's natural resources through their "manufacture, production, marketing, and sale of harmful PFAS for use in consumer products." Ex. A, Compl. ¶¶ 17, 21–22. The State alleges that Defendants' conduct "created and contributed to the existence of a public nuisance that has injured, and continues to injure, New Yorkers." *Id.* ¶ 17. According to the State, "3M's manufacture of PFAS for use in consumer products, as well as the marketing, production, and sale of consumer products containing PFAS, led to, and continues to lead to, widespread releases of PFOS, PFOA, PFBS, and other PFAS in the State." *Id.* ¶ 22. The State asserts that the PFAS contamination is "widespread," including because PFAS are "highly resistant to degradation in the environment, travel easily through water and air, and bioaccumulate in humans, plants, and animals." *Id.* ¶¶ 1, 4. The State contends that Defendants' conduct has caused "contamination of the State's drinking water, presenting a serious threat to public health," *id.* ¶ 209, increased the "burden on the State's healthcare infrastructure and social services," *id.* ¶ 269, and caused "long-lasting harm on the natural resources of New York," which "include surface waters encompassing more than 70,000 miles of rivers and streams, approximately 7,600 lakes and ponds, and numerous reservoirs," "abundant fish and wildlife," and "sediments and soils," *id.* ¶¶ 270–78. In short, the State seeks to hold 3M liable for PFAS contamination of "all natural resources of the State." *Id.* ¶¶ 20, 282, 289–90.

7. The State brings claims against 3M for public nuisance; strict products liability: failure to warn; deceptive acts or practices in violation of New York General Business Law § 349;

abuse acts or practices in violation of New York General Business Law § 349; unfair acts or practices in violation of New York General Business Law § 349; false advertising in violation of New York General Business Law § 350; repeated and persistent fraudulent acts in violation of New York Executive Law § 63(12); and repeated and persistent illegality in violation of New York Executive Law § 623(12). *Id.* ¶¶ 279–314.

8. In addition to this action, the State has filed four other actions based on similar allegations of PFAS contamination of New York's natural resources and harm to New Yorkers' health that are currently proceeding in the MDL. The State's two Military Site actions specifically allege PFAS contamination in the State caused by the discharge of AFFF at military sites in New York. *See* Exs. C, D. In those two actions, the State alleges that 3M manufactured AFFF and that its AFFF products were "discharged into the environment at or from" various sites throughout New York. Ex. D, Third Am. Compl. ¶¶ 2–3, 6–7; Ex. C, Fourth Am. Compl. ¶ 2. The State further alleges in each of those two actions that PFAS are "mobile" and "readily spread in the environment" such that they can "travel significant distances." Ex. C, Fourth Am. Compl. ¶ 48; Ex. D, Third Am. Compl. ¶ 32. The two complaints further allege that 3M's AFFF products "were included in [the Department of Defense's] Qualified Products List and/or Qualified Products Database, a list of products approved for purchase and use by DOD," and that "[s]ampling results of surface water, groundwater, soil, and/or fish at or near the Sites demonstrate the presence of elevated concentrations of PFOA/S." Ex. D, Third Am. Compl. ¶¶ 75–79; Ex. C, Fourth Am. Compl. ¶¶ 163–67. The State in each of the two actions seeks:

> (1) compensatory damages consisting of (i) costs incurred and to be incurred by the State in investigating, monitoring, remediating, and otherwise responding to injuries and/or threats to public health and the environment caused by Manufacturers' AFFF Products; and (ii) damages for harm to the State's natural resources; (2) punitive damages; and (3) injunctive and equitable relief in the form of a monetary fund for the State's reasonably expected future damages as set forth

> above, and/or requiring defendants to perform investigative and remedial work in response to the threats and/or injuries they have caused.

*See* Ex. D, Third Am. Compl. ¶ 4; Ex. C, Fourth Am. Compl. ¶ 5 (similar).

9. In this action, the State seeks to recover specifically for alleged contamination stemming from some of the same chemicals that are used in AFFF—perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS")—and that therefore are also at issue in the State's two Military Site actions. *See* Ex. A, Compl. ¶ 3; *See* Ex. D, Third Am. Compl. ¶ 3; Ex. C, Fourth Am. Compl. ¶ 3. Critically, PFOS and PFOA from AFFF commingle with, and are chemically indistinguishable from, PFOS or PFOA from other sources once they have entered the environment.

10. Across the State's two MilSpec AFFF actions, the State identifies 15 different Department of Defense sites in New York where AFFF was stored and/or used:

- Stewart Air National Guard Base/Stewart International Airport
- Francis S. Gabreski Airport
- Plattsburgh Air Force Base
- Griffiss Air Force Base
- MacArthur Airport
- Defense Fuel Support Point, Verona
- Westchester County Airport
- Calverton Naval Weapons Industrial Reserve Plant
- Niagara Falls Air Reserve Station/Niagara Falls International Airport
- Camp Smith
- Fort Drum
- Hancock Field Air National Guard Base
- Northrup Grumman Facility/Naval Weapons Industrial Reserve Plant Bethpage
- Seneca Army Depot
- Stratton/Schenectady Air National Guard Base

11. Alleged PFAS contamination of the State's natural resources and environment for which the State seeks recovery in this action was plausibly caused, at least in part, by the military's use and/or release of 3M MilSpec AFFF at or from these sites and others.

12. Additionally, numerous plaintiffs in the MDL have also alleged PFAS exposure or contamination from AFFF at various military bases and other installations throughout the State of New York. Those plaintiffs include municipalities and water providers[2] seeking to recover for alleged contamination to their water supplies, as well as New York residents[3] (including putative

[2] *See, e.g.*, **Exhibit E** (example municipality complaints, including Compl. ¶¶ 1–20, *Town of New Windsor v. United States of America*, No. 2:21-cv-01496-RMG, ECF No. 2 (D.S.C.) (New York municipality alleges PFAS contamination of its water supply from AFFF at Stewart Air National Guard Base/Stewart International Airport); Second Am. Compl. ¶¶ 1–11, *Suffolk County Water Authority v. 3M Co.*, No. 2:18-cv-03337-RMG, ECF No. 132 (D.S.C.) (New York municipal water supplier alleges PFAS contamination of its water supply from AFFF at Francis S. Gabreski Airport); Compl. ¶¶ 1–26, *Westmoreland Water District v. 3M Co.*, No. 2:23-cv-05035-RMG, ECF No. 3 (D.S.C.) (New York municipal water supplier alleges PFAS contamination of its water supply from AFFF at Griffiss Air Force Base); Am. Compl. ¶¶ 1–5, 85, 132–56, *Town of Islip, New York v. 3M Co.*, No. 2:21-cv-01915-RMG, ECF No. 15 (D.S.C.) (New York municipality alleges PFAS contamination of its water supply from AFFF at MacArthur Airport); Am. Compl. ¶¶ 1–11, 85–99, *County of Westchester v. United States of America*, No. 2:19-cv-01724-RMG, ECF No. 56 (D.S.C.) (New York county alleges PFAS contamination of its water supply from AFFF at Westchester County Airport); Compl. ¶¶ 1–17, *Village of Waterloo v. 3M Co.*, No. 2:21-cv-02812, ECF No. 1-1 (D.S.C.) (municipality alleges PFAS contamination of its property and water supply from AFFF at Seneca Army Depot)).

[3] *See, e.g.*, **Exhibit F** (example complaints involving individual plaintiffs, including Second. Am. Compl. ¶¶ 1–15, 727, *Allen v. 3M Co.*, No. 2:18-cv-03523-RMG, ECF No. 51 (D.S.C) (New York residents allege exposure to PFAS from AFFF at Stewart Air National Guard Base/Stewart International Airport and seek, among other things, damagers for "diseases and medical conditions" allegedly suffered); Second Am. Compl. ¶¶ 1–8; 23–43, 407–430, *Ayo v. 3M Co.*, No 2:18-cv-03338-RMG, ECF No. 123 (D.S.C.) (New York residents allege exposure to PFAS from AFFF at Francis S. Grabeski Airport and seeks, among other things, medical monitoring); Compl. ¶¶ 8, 105–09, 144, *Allen v. 3M Co.*, No. 2:22-cv-00720-RMG, ECF No. 1 (D.S.C.) (New York resident alleges exposure to PFAS from AFFF at Plattsburgh Air Force Base and Griffis Air Force Base and seeks, among other things, damages for the development of cancer); Compl. ¶¶ 8–9, 112–15, *Allen v. 3M Co.*, No. 2:20-cv-00369-RMG, ECF No. 8 (D.S.C.) (New York residents allege exposure to PFAS from AFFF at MacArthur Airport and seek, among other things, damages for the development of cancer); Compl. ¶¶ 1–13, 70–80, *Tumma v. 3M Co.*, No. 2:25-cv-04494-RMG, ECF No. 1 (D.S.C.) (New York resident alleges exposure to PFAS from AFFF at Westchester Airport and seeks, among other things, medical monitoring); Compl. ¶¶ 1, 18–23, 112, 186–198, *Fodora v. 3M Co.*, No. 2:22-cv-03108-RMG, ECF No. 1 (D.S.C.) (New York resident alleges exposure to PFAS from AFFF at Fort Drum and seeks, among other things, medical monitoring); Compl. ¶¶ 2–12, 63, 243–47, *Jones v. 3M Co.*, No. 2:25-cv-03824-RMG, ECF No. 1 (D.S.C.) (New York resident alleges exposure to PFAS from AFFF at Northrup Grumman/Naval Weapons Industrial Reserve Plant Bethpage and seeks, among other things medical monitoring)).

class representatives[4]) seeking to recover for personal injuries and/or medical monitoring costs allegedly caused by PFAS exposure from MilSpec AFFF that are encompassed by the State's allegations in this action that PFAS has caused a "burden on the State's healthcare infrastructure and social services" that is "poised to escalate." Ex. A, Compl. ¶ 269.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. §§ 1442(a)(1) AND 1446 ARE MET

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 112(a) and 1441(a) because the Supreme Court of the State of New York, County of Albany is located within the Northern District of New York.

14. 3M is not required to notify or obtain the consent of any other defendant to remove this action under § 1442(a)(1). *Bradford v. Harding*, 284 F.2d 307, 309–10 (2d Cir. 1960); *see also Frawley v. Gen. Elec. Co.*, No. 06-CV-5578, 2007 WL 656857, at *2 (S.D.N.Y. Mar. 1, 2007) ("Removal pursuant to the federal officer statute . . . does not require the consent of all defendants."); *Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 314 n. 1 (E.D.N.Y. 2014) ("A single federal officer defendant may remove an entire action.").

---

[4] *See, e.g.*, **Exhibit G** (example complaints involving putative class actions, including Class Action Compl. ¶¶ 1–11, 66–80, *Adamo v. Port Authority of New York and New Jersey*, No. 2:18-cv-03356-RMG, ECF No. 1-1 (D.S.C.) (putative New York class alleges exposure to PFAS from AFFF at Stewart Air National Guard Base/Stewart International Airport and seeks, among other things, medical monitoring); Second Am. Compl. ¶¶ 1–11, 66–78, *Fogarty v. Port Authority of New York and New Jersey*, No. 2:18-cv-03354-RMG, ECF No. 113 (D.S.C.) (putative New York class alleges exposure to PFAS from AFFF at Stewart Air National Guard Base/Stewart International Airport and seeks, among other things, medical monitoring); Second Am. Compl. ¶¶ 1–11, 66–80, *Miller v. Port Authority of New York and New Jersey*, No. 2:18-cv-03357, ECF No. 111 (D.S.C.) (putative New York class alleges exposure to PFAS from AFFF at Stewart Air National Guard Base/Stewart International Airport and seeks, among other things, medical monitoring); Second Am. Compl. ¶¶ 1–11, 227–29, *Green v. 3M Co.*, 2:18-cv-03335-RMG, ECF No. 151 (D.S.C.) (putative New York class alleges exposure to PFAS from AFFF at Francis S. Gabreski Airport and seeks, among other things, medical monitoring)).

15. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the operative complaint is attached as Exhibit A, and true and correct copies of the documents on file in this case prior to the filing of this notice of removal, including all process, pleadings, and orders served upon 3M in this action, are attached to this notice of removal as Exhibit B.

16. 3M has not yet been served with the complaint, so removal is timely under 28 U.S.C. § 1446(b).

17. Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the Supreme Court of the State of New York, County of Albany.

18. By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, personal jurisdiction, or venue, and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

19. 3M reserves the right to amend or supplement this Notice of Removal.

20. If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

21. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person acting under a federal officer"; (b) its actions were "for or relating to any act under color of such office," and (c) it can assert a "colorable" federal defense. *See Chevron*, 608 U.S. ----, 146 S. Ct. at 1057–58 (2026) (internal quotations omitted);

*Mesa v. California*, 489 U.S. 121, 124-125, 129-131, 133-135 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016).

22. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, § 1442 must be "liberally construed" in favor of removal, *Watson v. Philip Morris Co., Inc.*, 51 U.S. 142, 147 (2007), and "the typical presumption against removal does not apply." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021). *See also Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021) ("While the general removal statute must be strictly construed, . . . § 1442 . . . must be read broadly.")

23. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are related to MilSpec AFFF. *See, e.g.*, *Chevron*, 608 U.S. ----, 146 S. Ct. at 1060; *Cuomo*, 771 F.3d at 115-117 (reversing order remanding case to state court because the requirements of § 1442(a)(1) were met with respect to allegedly defective product designed pursuant to military specifications); *Maine*, 159 F.4th at 138-140 (holding that 3M met the requirements for federal officer removal where it alleged PFAS from

MilSpec AFFF contributed to PFAS contamination alleged by State, even where the state attempted to disclaim any AFFF-related claims); *Maryland*, 130 F.4th at 290–92 (same); *Nessel*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in PFAS case against AFFF manufacturers because, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF, . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV- 0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against manufacturers of MilSpec AFFF allegedly used at Francis S. Gabreski Airport); *The City of Irondale v. 3M Company, Inc., et al.*, No. 2:23-cv-01327-AMM, 2025 WL 2419238, at *6 (N.D. Ala. Aug. 19, 2025) (denying motion to remand and noting that for federal officer removal purposes, removal is proper so long as 3M has "put forth a **plausible** case that MilSpec AFFF is a **potential** source of [the plaintiff's] complained-of injury") (emphasis in original).

24. The court overseeing the MDL has also concluded on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that the plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18- mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. In fact, the MDL Court has already determined that one of the State's Military Site Actions was properly removed because the State's "claims ar[o]se[] out of AFFF use . . . for which the U.S. military imposes MilSpec standards" such that a federal government contractor defense was properly raised. *See* Order Denying Remand at 4–6, *State of*

*New York v. 3M Co.*, No. 2:19-cv-01022-RMG, ECF No. 48 (D.S.C May 4, 2019). The MDL Court's holdings demonstrate that this case, too, has been properly removed to federal court.[5]

### A. **MilSpec AFFF**

25. In the late 1960s/early 1970s, the United States military began using MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted the first AFFF patent in 1966.[6] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[7]

26. The design and manufacture of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, part of the Department of Defense ("DoD"). The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised several times since.[8] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[9] Prior to such listing, a "manufacturer's . . . products are examined, tested, and approved to be in conformance

[5] Following removal, 3M intends to designate this action for transfer to the MDL, where, as previously noted, the State already has pending four other actions alleging PFAS contamination of its natural resources.

[6] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[7] U.S. Navy, NRL/MR/1001-06-8951, U.S. Naval Research Lab., *The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power*, at 37 (June 30, 2006) ("*Fulfilling the Roosevelts' Vision*"), http://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[8] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[9] MIL-PRF-24385F(4) § 3.1 (2020).

with specification requirements."[10] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[11] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[12] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[13]

27. From its inception until 2019, the MilSpec for AFFF included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their precursors—among the compounds expressly alleged to be at issue in this action. *See* Ex. A, Compl. ¶¶ 62, 64, 103–04.[14] The current MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[15] Indeed, the current MilSpec recognizes that it is not yet technically

---

[10] DoD SD-6, Provisions Governing Qualification at 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[11] *See, e.g.*, MIL-PRF-24385F(4) at 18 (2020). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. (*See* DoD SD-6, *supra* n.10, at 3.)

[12] DoD SD-6, *supra* n.10, at 1.

[13] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[14] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[15] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

feasible for manufacturers to completely eliminate PFOA and PFOS from AFFF "while still meeting all other military specification requirements."[16]

28. 3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades pursuant to contracts with the United States. One or more of 3M's AFFF products were on the Navy's Qualified Products List for AFFF from 1970 until 2010 (even though 3M had phased out production of AFFF beginning in 2000).[17]

29. As discussed in more detail below, 3M sales records show that 3M formerly supplied MilSpec AFFF to various military installations in New York, including but not limited to those that the State identifies in its two MilSpec AFFF Actions complaints.

30. In addition to directly selling MilSpec AFFF to specific military bases, 3M was a major supplier (and, at certain times, the exclusive supplier) of MilSpec AFFF to the Defense Logistics Agency, which distributed AFFF for use at military bases across the United States, including in New York.

### B. 3M MilSpec AFFF Plausibly Contributed to PFAS Contamination Alleged By The State in this Action.

31. The State in this action seeks to recover for alleged "threats to human health, widespread environmental contamination, and damage to natural resources," Ex. A, Compl. ¶ 1, broadly asserting harm to "all" natural resources "throughout" New York, *id.* ¶¶ 11, 277, 282. The State asserts that its natural resources at issue "include surface waters encompassing more than 70,000 miles of rivers and streams, approximately 7,600 lakes and ponds, and numerous

[16] MIL-PRF-24385F(4) § 6.6.

[17] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014) & MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

reservoirs," *Id.* ¶ 271, which constitutes essentially all of the natural water within the State.[18] The State also asserts its natural resources at issue include "abundant fish and wildlife" and "sediments and soils" that the State contends are "essential to a functioning ecosystem, acting as the primary site for nutrient cycling and providing the base of the food chain for both terrestrial and aquatic habitats." Ex. A, Compl. ¶¶ 272–73.

32. In other words, the State's complaint makes clear that it seeks to recover for all alleged PFAS contamination in the State affecting *all* of its natural resources, wherever those resources are located. The State therefore seeks to recover for some, if not all, of the *exact same* alleged PFAS contamination for which it seeks to recover in its AFFF actions—including multiple military sites where 3M MilSpec AFFF was plausibly used or released—because those complaints likewise seek to recover for alleged PFAS contamination resulting from AFFF that was "discharged into the environment at or from sites throughout New York." Ex. D, Third Am. Compl. ¶ 2; Ex. C, Fourth Am. Compl. ¶ 2 ("3M . . . designed, manufactured, marketed, and sold AFFF that were discharged into the environment at or from sites throughout New York."). The State's own allegations about the alleged mobility and potential for airborne transport of PFAS and movement further confirm that the scope of the natural resources in this action includes natural resources plausibly contaminated by MilSpec AFFF. *See, e.g.,* Ex. A, Compl. ¶¶ 68, 70; Ex. C, Fourth Am. Compl. ¶ 48; Ex. D, Third Am. Compl. ¶ 32.

33. As the below map illustrates, the various military sites at issue in the State's AFFF actions—which the State also contends caused PFAS contamination of the State's natural

[18] New York Department of Environmental Conservation, *Places to Fish*, available at https://dec.ny.gov/things-to-do/freshwater-fishing/places-to-fish ("With more than 7,500 lakes and ponds and 70,000 miles of rivers and streams, there are plenty of places to try freshwater fishing in New York!").

resources—are located "throughout" New York and thus have allegedly impacted many of the "more than 70,000 miles of rivers and streams, approximately 7,600 lakes and ponds, and numerous reservoirs," "abundant fish and wildlife," and "sediments and soils" that the State contends are at issue in this case. Ex. A, Compl. ¶ 271. Under such circumstances, it is undeniable that at least some of the alleged PFAS contamination for which the State seeks to recover was plausibly caused, at least in part, by MilSpec AFFF. Indeed, in the Military Site AFFF Actions, the State alleges that there is PFAS contamination of the "surface water, groundwater, soil, and/or fish" at or near the fifteen military sites it identifies. Ex. C, Fourth Am. Compl. ¶ 167; Ex. D, Third Am. Compl. ¶ 79. Therefore, removal is proper. *See Maine*, 159 F.4th at 130 (reversing remand where State had broadly sought damages for alleged PFAS contamination "throughout Maine," "statewide," and for a wide variety of natural resources including water, soil, and wildlife); *Maryland*, 130 F.4th at 392 (reversing remand where State alleged PFAS contamination at "numerous geographic locations").



34. In addition to its broad claims of harm to "all" natural resources "throughout" New York, Ex. A, Compl. ¶¶ 11, 277, 282, the State identifies several types of "costs incurred by the State in addressing contamination" for which it seeks to recover in this action that also clearly encompass alleged contamination plausibly caused by 3M MilSpec AFFF, *id.* at p. 45.

35. For instance, the State alleges that it has "expended significant resources to (i) protect New York residents from contaminated drinking water." *See id.* ¶¶ 208–35. However, the use or release of 3M MilSpec AFFF discharge at several U.S. military sites in New York, including those identified in the State's other complaints, has plausibly caused or contributed to the alleged PFAS drinking water contamination for which the State seeks to recover in this action:

- Fort Drum: 3M sales records reflect sales of MilSpec AFFF to Fort Drum. In a complaint filed against 3M and other defendants, the State alleges that "DOD stored and/or used AFFF at Fort Drum for the last several decades and at least since 1987." Ex. D, Third Am. Compl. ¶ 101. MilSpec AFFF use has been documented at Fort Drum,[19] and PFAS has been detected in the drinking water, groundwater, surface water, and soil at Fort Drum.[20] *Id.* ¶ 85. Fort Drum is located in the Black River drainage basin, and "surface water and stormwater runoff are directed via drainage ditches and outfalls into the Back River."[21] The City of Watertown, New York's surface water intake is located in the Black River approximately four miles downstream of Fort Drum,[22] and PFAS has been detected in Watertown's drinking water.[23]

- Stewart Air National Guard Base/Stewart International Airport ("Stewart Air Base"): 3M sales records reflect sales of MilSpec AFFF to Stewart Air Base. In a complaint filed against 3M and other defendants, the State alleges that "AFFF Products were stored and used at Stewart Air Base beginning as early as the 1980s," and that "DOD personnel sprayed AFFF Products directly on or near the ground, caused it to be

[19] Arcadis U.S., Inc., Preliminary Assessment and Site Inspection of Per- and Polyfluoroalkyl Substances, Fort Drum, New York at 22, 34, 36–37 (Nov. 2022), https://aec.army.mil/Portals/115/PFAS/Fort_Drum_PFAS_PA_SI.pdf.

[20] *Id.* at 74, 80, 132.

[21] *Id.* at 8.

[22] *Id.* at 26.

[23] Anthony Borrelli, *EPA Finds PFAS 'Forever Chemicals' in NY Water at These Locations*, Press & Sun-Bulletin (Feb. 24, 2026), https://www.pressconnects.com/story/news/2026/02/24/epa-finds-pfas-forever-chemicals-in-ny-water-at-these-locations/88854582007/.

disposed of in drains, and spilled it or otherwise caused it to discharge into the environment," including into "Lake Washington and surrounding areas." Ex. C, Fourth Am. Compl. ¶ 172. The State also alleges that PFAS has been detected in "surface water, groundwater, soil, fish, and other media at or near Stewart Air Base and Stewart Airport," and that PFAS was also detected in "surface water within runoff that flows from Stewart Air Base to Recreation Pond; Silver Stream, which runs from Recreation Pond to Lake Washington; Lake Washington; and surrounding areas." *Id.* ¶¶ 180–81. The City of Newburgh, New York's primary source of drinking water is Lake Washington, and the State has "initiated investigations into the source of the PFAS" in Lake Washington.[24] The State has also "funded, designed and constructed a permanent Granulated Activated Carbon (GAC) treatment system to filter PFAS out of the City of Newburgh's public water supply Washington Lake."[25] The State alleges that it has expended significant resources and efforts to address PFAS contamination of drinking water from Stewart Air Base. *Id.* ¶¶ 188–93.

- <u>Francis S. Gabreski Airport ("Gabreski Airport")</u>: 3M sales records reflect sales of MilSpec AFFF to Francis S. Gabreski Airport. In a complaint filed against 3M and other defendants, the State alleges that "AFFF Products were stored and used at Gabreski Airport beginning in at least the 1980s," and that "DOD personnel sprayed AFFF Products directly on or near the ground, caused it to be disposed of in drains, and spilled it or otherwise caused it to discharge into the environment," which allegedly contaminated "public and private drinking water sources in the area." Ex. C, Fourth Am. Compl. ¶¶ 195, 200. Granular activated carbon treatment has been deployed in multiple public water supply wells near Gabreski Airport to treat purported PFAS contamination,[26] and the State has alleged it has incurred costs in connection with addressing PFAS contamination of drinking water stemming from Gabreski Airport. *Id.* ¶¶ 209–11.

- <u>Defense Fuel Support Point Verona ("Verona")</u>: In a complaint filed against 3M and other defendants, the State alleges that "DOD stored and/or used AFFF products at Verona since at least the 1980s." Ex. D, Third Am. Compl. ¶ 91. MilSpec AFFF use has been documented at Verona, and PFAS has been detected in drinking water and groundwater at Verona.[27] *Id.* ¶ 85.

---

[24] New York State Dep't of Envtl. Conservation, Region 3 Remediation Project Information – Newburgh, https://dec.ny.gov/environmental-protection/site-cleanup/regional-remediation-project-information/region-3/newburgh.

[25] *Id.*

[26] Parsons, Draft Final Expanded Site Inspection Report for Per- and Polyfluoroalkyl Substances (PFAS) at the Gabreski Air National Guard Base, Westhampton, Long Island, New York at 23–24 (Dec. 2020), https://extapps.dec.ny.gov/data/DecDocs/152148/Report.HW.152148.2020-12-22.Draft%20Final%20PFAS%20ESI%20Report%20Gabreski%20ANGB_22Dec2020.pdf.

[27] TK&K Services, Final PFAS Remedial Investigation Work Plan, Defense Fuel Support Point Verona at 1–2 (Aug. 2024),

- Plattsburgh Air Force Base ("Plattsburgh Air Base"): 3M sales records reflect sales of MilSpec AFFF to Plattsburgh Air Base. In a complaint filed against 3M and other defendants, the State alleges that "AFFF Products were stored and used at Plattsburgh Air Base beginning in the 1970s through at least the 1980s," and that "DOD personnel sprayed AFFF Products directly on or near the ground, caused it to be disposed of in drains, and spilled it or otherwise caused it to discharge into the environment," which allegedly contaminated "private drinking water sources in the area." Ex. C, Fourth Am. Compl. ¶¶ 213, 215.

- Seneca Army Depot: In a complaint filed against 3M and other defendants, the State alleges that "DOD used and/or stored AFFF at Seneca Army Depot since at least the 1960s." Ex. D, Third Am. Compl. ¶ 107. PFAS detections consistent with AFFF use has been documented at Seneca Army Depot, Seneca Army Depot is located between Seneca Lake and Cayuga Lake,[28] and PFAS has been detected in the groundwater at Seneca Army Depot.[29] *Id.* ¶ 85. Seneca Lake is the drinking water source for "approximately 100,000 people."[30]

- MacArthur Airport ("MacArthur"): In a complaint filed against 3M and other defendants, the State alleges that "DOD stored and/or used AFFF products at MacArthur since at least 2007." Ex. D, Third Am. Compl. ¶ 89. MilSpec AFFF use has been documented at MacArthur,[31] PFAS has been detected in the drinking water and groundwater at MacArthur.[32] *Id.* ¶ 85. Several water supply wells are located downgradient of MacArthur.[33] The State has tested private wells and offered alternate

---

https://extapps.dec.ny.gov/data/DecDocs/633086/Work%20Plan.HW.633086.2024-08-01.PFAS_RIWP_FINAL_August_2024.pdf.

[28] Parsons, Final 2017 PFAS Site Inspection Report for the Fire Training and Demonstration Pad (SEAD 25), Fire Training Pit and Area (SEAD 26) and Airfield and Refueling Pads (SEAD 122E), Seneca Army Depot Activity, Romulus, New York at 1, 12 (Jan. 2018), https://aec.army.mil/Portals/115/PFAS/SEAD_PFAS_SI.pdf?ver=juFfSG5J_qXUnnFdVpCuHg%3D%3D.

[29] *Id.* at 12.

[30] Seneca Lake Pure Waters Ass'n, Lake Uses, https://senecalake.org/about/seneca-lake/primary-uses/ ("Seneca Lake is the drinking water supply for approximately 100,000 people.").

[31] EA Engineering, Science, and Technology, Inc., Site Inspection Report, Army Aviation Support Facility #1, Ronkonkoma, New York at 4, 12, 20 (Dec. 2023), https://extapps.dec.ny.gov/data/DecDocs/152267/Report.HW.152267.2023-12-18.SI%20Report.pdf.

[32] *Id.* at Table 6-5.

[33] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 152251 (MacArthur Airport), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=152251.

water supplies to property owners whose water supplies had PFOS or PFOA concentrations above the State's drinking water standards.[34]

- Westchester County Airport ("Westchester Airport"): 3M sales records reflect sales of MilSpec AFFF to Westchester Airport. In a complaint filed against 3M and other defendants, the State alleges that "DOD stored and/or used AFFF products at Westchester County Airport" between 1950 and 1984. Ex. D, Third Am. Compl. ¶ 93. MilSPec AFFF use has been documented at Westchester Airport, and PFAS has been detected in the drinking water, groundwater, and surface water—as well as surface water outfall—at Westchester Airport.[35] *Id.* ¶ 85. An AFFF burn pit at Westchester Airport is located within the Rye Lake Drainage Basin.[36] The Rye Lake is "a drinking water reservoir" and is "part of the Kensico Reservoir that provides approximately two percent of the drinking water to the Westchester and New York City Area."[37]

36. The State also seeks to recover for its efforts to "identify, investigate and mitigate environmental contamination," including but not limited to alleged PFAS contamination at or from landfills, hazardous waste (Superfund) sites, rural areas, and biosolid application sites. *See* Ex. A, Compl. ¶¶ 208, 236–61. But at least some of these alleged investigation and mitigation costs plausibly relate to alleged contamination caused or contributed to by 3M MilSpec AFFF released from U.S. military sites in New York, including those identified in the State's other complaints:

- Fort Drum: As explained above, alleged PFAS contamination of the environment and natural resources, including the Black River, in and around Fort Drum was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Fort Drum. A landfill at Fort Drum is "subject to a long-term monitoring and

[34] New York State Dep't of Envtl. Conservation, Fact Sheet – Site No. 152251 (Class 2 Reclassification), at 1 (February 2023), https://extapps.dec.ny.gov/data/der/factsheet/152251class2.pdf.

[35] First Environment, Updated Remedial Investigation Workplan, Westchester County Airport at 18, 21 (Mar. 2024), https://extapps.dec.ny.gov/data/DecDocs/C360174/Work%20Plan.BCP.C360174.2024-03-22.RIWP.pdf.

[36] *Id.* at 17 and Figure 3.

[37] *Id.* at 9, 29.

maintenance program" for environmental contamination,[38] and PFAS has been detected downstream of the Fort Drum landfill.[39]

- Stewart Air Base: As explained above, alleged PFAS contamination of the environment and other natural resources in and around Stewart Air Base, including Lake Washington, was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Stewart Air Base. Stewart Air Base has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State.[40] *See* Ex. C, Fourth Am. Compl. ¶ 184. The State also alleges that it has "incurred substantial costs in connection with investigating and protecting the public" from PFAS contamination from Stewart Air Base. *Id.* ¶ 186.

- Calverton Naval Weapons Industrial Reserve Plant ("Calverton"): In a complaint filed against 3M and other defendants, the State alleges that "DOD stored and/or used AFFF at Calverton as early as 1950 until it closed in 1996." Ex. D, Third Am. Compl. ¶ 95. MilSpec AFFF has been documented at Calverton,[41] and PFAS has been detected in drinking water and groundwater near Calverton.[42] *Id.* ¶ 85. PFAS was reported to have been "released to the environment through small quantity spills during testing of AFFF specifications, leaks . . . , flow in the outside drainage ditches, or leaching from impacted cesspools used to collect any runoff associated with AFFF spills."[43]

---

[38] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 623008 (Jefferson County – Fort Drum-area landfill), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=623008.

[39] Arcadis U.S., Inc., Preliminary Assessment and Site Inspection of Per- and Polyfluoroalkyl Substances, Fort Drum, New York at 80 (Nov. 2022), https://aec.army.mil/Portals/115/PFAS/Fort_Drum_PFAS_PA_SI.pdf.

[40] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 336089 (Stewart Air Base, Newburgh, Orange County), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=336089.

[41] Tetra Tech, Sampling and Analysis Plan (Field Sampling Plan and Quality Assurance Project Plan) for Per- and Polyfluoroalkyl Substances Remedial Investigation, Site 15–Fuel Storage Terminal, Former Naval Weapons Industrial Reserve Plant Calverton at 30 (Mar. 2025), https://administrative-records.navfac.navy.mil/Public_Documents/MID_ATLANTIC/CALVERTON_NWIRP/N96095_001792.pdf.

[42] Tetra Tech, Final Per- and Polyfluoroalkyl Substances Site Inspection for Multiple Areas – Volume 1 of 2, Text, Tables, Figures, Appendices A through G, Naval Weapons Industrial Reserve Plant Calverton, Calverton, New York at Table 4-41, Figure 4-8 (Oct. 2023), https://administrative-records.navfac.navy.mil/Public_Documents/MID_ATLANTIC/CALVERTON_NWIRP/N96095_001708.pdf.

[43] Tetra Tech, Sampling and Analysis Plan (Field Sampling Plan and Quality Assurance Project Plan) for Per- and Polyfluoroalkyl Substances Remedial Investigation, Site 15–Fuel Storage

Calverton is located near "[m]ajor surface water features," such as McKay Lake and Northeast Pond, and McKay Lake has "intermittent discharge to Swan Pond, located 1,500 feet to the south of NWIRP Calverton."[44] Calverton has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State.[45]

- Niagara Falls Air Reserve Station/Niagara Falls International Airport ("Niagara Falls ARS"): 3M sales records reflect sales of MilSpec AFFF to Niagara Falls ARS. In a complaint filed against 3M and other defendants, the State alleges that "DOD stored and/or used AFFF at Niagara Falls ARS since at least the early 1960s." Ex. D, Third Am. Compl. ¶ 97. MilSpec AFFF use has been documented at Niagara Falls ARS, and PFAS has been detected in the groundwater, surface water, sediment, and soil at Niagara Falls ARS.[46] *Id.* ¶ 85. Surface water near Niagara Falls ARS "primarily follows through a system of drainage ditches and underground storm drains, which all discharge into the Cayuga Creek" and eventually the Little River, a tributary to the Niagara River.[47] Niagara Falls ARS has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State.[48]

- Hancock Field Air National Guard Base ("Hancock Field"): 3M sales records reflect sales of MilSpec AFFF to Hancock Field. In a complaint filed against 3M and other defendants, the State alleges that the "DOD has used and/or stored AFFF at Hancock Field since at least 1987." Ex. D, Third Am. Compl. ¶ 103. MilSpec AFFF use has been

Terminal, Former Naval Weapons Industrial Reserve Plant Calverton at 32 (Mar. 2025), https://administrative-records.navfac.navy.mil/Public_Documents/MID_ATLANTIC/CALVERTON_NWIRP/N96095_001792.pdf.

[44] Tetra Tech, Facility-Wide Preliminary Assessment of Potential Sources of Per- and Polyfluoroalkyl Substances (PFAS), Naval Weapons Industrial Reserve Plant Calverton, Calverton, New York at 2-3 (Oct. 2021), https://administrative-records.navfac.navy.mil/Public_Documents/MID_ATLANTIC/CALVERTON_NWIRP/N96095_001629_REDACTED.pdf.

[45] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 152136 (Calverton), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=152136.

[46] Aerostar SES LLC, Final Site Inspections Report of Fire Fighting Foam Usage at Niagara Falls Air Reserve Station, Niagara County, New York at 75, 79 (Dec. 2018), https://extapps.dec.ny.gov/data/DecDocs/932106/Report.RCRA.932106.2019-01-10.Final_Site_Inspection_Report_AFFF_at_NFARS.pdf.

[47] *Id.* at 43, 55, 61–62.

[48] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 932152 (Niagara Falls ARS), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=932152.

documented at Hancock Field, and PFAS has been detected in the groundwater and surface water outfalls at Hancock Field.[49] *Id.* ¶ 85. "In-ground conveyances and grass-lined ditches carry stormwater drainage from the Base to the North Branch of Ley Creek, which flows in a southwesterly direction to the east of the Base and eventually discharge to Onondaga Lake, located approximately five miles southwest of the Base."[50] Hancock Field has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State.[51]

- Gabreski Airport: As explained above, alleged PFAS contamination of the environment and natural resources in and around Gabreski Airport is plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Gabreski Airport. Gabreski Airport has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State,[52] and the State has alleged that it "incurred substantial costs in connection with its investigation" of PFAS contamination. Ex. C, Fourth Am. Compl. ¶¶ 207–08.

- Verona: As explained above, alleged PFAS contamination of the environment and natural resources in and around Verona was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Verona. Verona has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State.[53] The State has determined that "[c]ontaminated groundwater is likely migrating offsite [from Verona] toward Stony Creek."[54]

---

[49] AECOM, Final Site Inspection Report, Air National Guard Phase II Regional Site Inspections for Per- and Polyfluoroalkyl Substances, Hancock Field Air National Guard Base, Syracuse, New York at 17, 21 & fig. 5-4 (Mar. 2019).

[50] *Id.* at 5, 16–18

[51] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 734054 (Hancock Field), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=734054.

[52] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 152261 (Gabreski Airport), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=152261.

[53] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 633086 (Verona), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=633086.

[54] New York State Dep't of Envtl. Conservation, Fact Sheet – Site No. 633086 (Class Reclassification), at 1 (May 8, 2024), https://extapps.dec.ny.gov/data/DecDocs/633086/Fact%20Sheet.HW.633086.2024-05-08.Public%20Notice%20-%20Reclass%20(P%20to%202)%20.pdf.

- Plattsburgh Air Base: As explained above, alleged PFAS contamination of the environment and natural resources in and around Plattsburgh Air Base, including the Saranac River, Salmon River, and Lake Champlain, was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Plattsburgh Air Base. Plattsburgh Air Base has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State,[55] and the State has alleged that it "has suffered monetary damages from its investigation and response" to the contamination at Plattsburgh. Ex. C, Fourth Am. Compl. ¶ 223.

- Seneca Army Depot: As explained above, alleged PFAS contamination of the environment and natural resources in and around Seneca Army Depot, including Seneca Lake, was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Seneca Army Depot. Seneca Army Depot has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State.[56]

- MacArthur: As explained above, alleged PFAS contamination of the environment and natural resources in and around MacArthur was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at MacArthur. MacArthur has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State.[57]

- Westchester Airport: As explained above, alleged PFAS contamination of the environment and natural resources in and around Westchester Airport, including the Rye Lake, was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Westchester Airport. Westchester Airport has been designated for remediation by the State of New York due to purported PFAS contamination and therefore has been subject to investigation and monitoring by the State.[58]

---

[55] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 510003 (Plattsburgh Air Base, Clinton County), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=510003.

[56] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 850006 (Seneca Army Depot), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=850006.

[57] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 152251 (MacArthur Airport), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=152251.

[58] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. C360174 (Westchester County Airport, BCP), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=C360174.

- Griffiss Air Force Base ("Griffiss Air Base"): 3M sales records reflect sales of MilSpec AFFF to Griffiss Air Base. In a complaint filed against 3M and other defendants, the State alleges that "AFFF Products were stored and used at Griffiss Air Base and/or Griffiss International Airport beginning in the 1970s through at least the 1990s," and that "DOD personnel sprayed AFFF Products directly on or near the ground, caused it to be disposed of in drains, and spilled it or otherwise caused it to discharge into the environment." Ex. C, Fourth Am. Compl. ¶¶ 225, 230. PFAS has been detected in the groundwater, surface water, and soil at Griffiss Air Base.[59] *Id.* ¶¶ 234–35. "Eleven potential AFFF areas" at Griffiss Air Base "drain to Six Mile Creek via groundwater and/or storm discharges."[60] Griffiss Air Base has been designated a superfund site pursuant to the State's superfund program and is therefore subject to investigation and monitoring by the State,[61] and the State alleges that it has "suffered monetary damages from its investigation and response" to the purported contamination at Griffiss Air Base. *Id.* ¶ 237.

37. The State also seeks to recover for its efforts to "protect people from exposure to PFAS through consumption of contaminated fish caught in New York waters." Ex. A, Compl. ¶ 208, 262–69. Notably, fish and wildlife, by their very nature, can move throughout various land and waters of the State, and thus the State's claims related to contaminated fish overlap with their claims in other cases alleging MilSpec AFFF as the source of PFAS. And because, as alleged above, the sources of relevant PFAS, including PFOS and PFOA, are indistinguishable in the environment, the presence of PFAS in at least some of the fish or wildlife at issue in this action plausibly stems from Milspec AFFF. Indeed, the use or release of 3M MilSpec AFFF from U.S. military sites in New York, including those identified in the State's other complaints, has plausibly caused or contributed to the alleged PFAS contamination of the waters where the State has issued fish advisories:

---

[59] Wood Environment & Infrastructure Solutions, Inc., Final Site Inspection Report for Aqueous Film Forming Foam (AFFF) Areas, Former Griffiss Air Force Base, New York fig. 3.3-1 (Nov. 2018).

[60] *Id.* at 59.

[61] New York State Dep't of Envtl. Conservation, Div. of Envtl. Remediation, Environmental Remediation Database, Site No. 633006 (Griffiss Air Force Base), https://appfactory.dec.ny.gov/DERExternalSearch/ERDDetails?SiteCode=633006.

- Fort Drum: As explained above, alleged PFAS contamination of the environment and natural resources in and around Fort Drum, including the Black River, was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Fort Drum. The State has investigated PFAS levels in fish in the Black River and issued a fish consumption advisory due to PFAS.[62]

- Stewart Air Base: As explained above, alleged PFAS contamination of Lake Washington and other natural resources in New York was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Stewart Air Base. The State has investigated PFAS levels in fish in Lake Washington and issued a fish consumption advisory for Lake Washington due to PFAS.[63]

- Calverton: As explained above, alleged PFAS contamination of the environment and natural resources in and around Calverton, including Swan Pond, is plausibly caused, at least in part by the storage, use, and/or discharge of 3M's MilSpec AFFF at Calverton. The State has investigated PFAS levels in fish in Swan Pond and issued a fish consumption advisory for Swan Pond due to PFAS.[64]

- Niagara Falls ARS: As explained above, alleged PFAS contamination of the environment and natural resources in and around Niagara Falls ARS, including the Cayuga Creek, Little River, and Niagara River, is plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Niagara Falls ARS. The State has investigated PFAS levels in fish in Lake Washington and issued a fish consumption advisory for Cayuga Creek due to PFAS.[65]

- Hancock Field: As explained above, alleged PFAS contamination of the environment and natural resources in and around Hancock Field, including Ley Creek and Onondaga Lake, was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Hancock Field. The State has investigated PFAS levels in fish

[62] New York State Dep't of Health, Health Advice on Eating Fish You Catch – Jefferson County (Fort Drum / Black River), https://www.health.ny.gov/environmental/outdoors/fish/health_advisories/by_county.htm?county=jefferson.

[63] New York State Dep't of Health, Fish Consumption Advisory Map – Orange County (Stewart Air Base / Lake Washington), at 7, https://www.health.ny.gov/environmental/outdoors/fish/health_advisories/maps/docs/orange_co_final.pdf.

[64] New York State Dep't of Health, Health Advice on Eating Fish You Catch – Suffolk County (Calverton / Swan Pond), https://www.health.ny.gov/environmental/outdoors/fish/health_advisories/by_county.htm?county=suffolk.

[65] New York State Dep't of Health, Health Advice on Eating Fish You Catch – Niagara County (Niagara Falls ARS / Cayuga Creek), https://www.health.ny.gov/environmental/outdoors/fish/health_advisories/by_county.htm?county=niagara.

in Onondaga Lake and has issued a fish consumption advisory for Onondaga Lake due to PFAS.[66]

- Stratton/Schenectady Air National Guard ("Stratton Air Base"): 3M sales records reflect sales of MilSpec AFFF to Stratton Air Base. In a complaint filed against 3M and other defendants, the State alleges the "DOD stored and/or used AFFF at Stratton/Schenectady Air National Guard Base since at least 1988." Ex. D, Third Am. Compl. ¶ 109. PFAS was reported to have been used at the Stratton Air Base,[67] and PFAS has been detected in the groundwater and surface water near Stratton Air Base.[68] Stratton Air Base is located a mile north of the Mohawk River, and the Town of Glenville's municipal water wells are approximately five miles west of the Stratton Air Base.[69] PFAS has been detected in stormwater runoff from Stratton Air Base, which "flows into the Alplaus Kill via an unnamed creek. The Alplaus Kill flows for approximately 0.75 miles along Glenville's eastern boundary before emptying into the Mohawk River."[70] The State has investigated PFAS levels in fish near Stratton Air Base and issued a fish consumption advisory for an unnamed stream near the Schenectady Airport due to PFAS.[71]

- Plattsburgh Air Base: As explained above, alleged PFAS contamination of the environment and natural resources in and around Plattsburgh Air Base was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Plattsburgh Air Base. PFAS has been detected in groundwater, surface water, and soil at Air Base Plattsburgh,[72] Ex. C, Fourth Am. Compl. ¶¶ 219–20, and "[a] network of on-base drainage ways carries surface water runoff into sewers and streams that ultimately discharge into the Saranac and Salmon Rivers and Lake Champlain."[73] The

[66] New York State Dep't of Health, Health Advice on Eating Fish You Catch – Onondaga County (Hancock Field / Onondaga Lake), https://www.health.ny.gov/environmental/outdoors/fish/health_advisories/by_county.htm?county=onondaga.

[67] AECOM, Final Site Inspection Report, Air National Guard Phase II Regional Site Inspections for Per- and Polyfluoroalkyl Substances, Schenectady Air National Guard Base, Scotia, New York at 23–27 (Oct. 2019).

[68] *Id.* at 47.

[69] *Id.* at 29–31.

[70] *Id.* at 29.

[71] New York State Dep't of Health, Health Advice on Eating Fish You Catch – Schenectady County (Stratton Air National Guard Base), https://www.health.ny.gov/environmental/outdoors/fish/health_advisories/by_county.htm?county=schenectady.

[72] U.S. Air Force Civil Engineer Center, Final Sixth Five-Year Review Report, Former Plattsburgh Air Force Base, Plattsburgh, New York at 3-12 (Mar. 2026), https://semspub.epa.gov/work/02/773487.pdf.

[73] *Id.* at 2-1.

State has investigated PFAS levels in fish in Lake Champlain and has issued a fish consumption advisory for Lake Champlain due to PFAS.[74]

- Seneca Army Depot: As explained above, alleged PFAS contamination of the environment and natural resources in and around Seneca Army Depot, including Seneca Lake, was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Seneca Army Depot. The State has investigated PFAS levels in fish in Seneca Lake and has issued a fish consumption advisory for Seneca Lake due to PFAS.[75]

- Griffiss Air Base: As explained above, alleged PFAS contamination of the environment and natural resources in and around Griffiss Air Base, including Six Mile Creek, was plausibly caused, at least in part, by the storage, use, and/or discharge of 3M's MilSpec AFFF at Griffiss Air Base. The State has investigated PFAS levels in fish in Six Mile Creek and has issued a fish consumption advisory for Six Mile Creek due to PFAS.[76]

38. Moreover, the State broadly contends that "the burden on the State's healthcare infrastructure and social services is poised to escalate given the link between PFAS exposure and various cancers, immune system disorders, and developmental issues." Ex. A, Compl. ¶ 269. However, to the extent that the State seeks recovery for any costs associated with purported health effects of PFAS exposure on its residents, many of those residents were plausibly exposed to PFAS from 3M MilSpec AFFF. Indeed, dozens of Plaintiffs who currently reside in New York have alleged in cases already part of the MDL that they sustained health effects and/or require medical monitoring due to exposure to PFAS from AFFF used at DOD sites, including those the State identifies in its other complaints. *See* Exs. F, G.

---

[74] U.S. EPA, Superfund Site Profile – Plattsburgh Air Force Base (ID 0202439), https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.stayup&id=0202439.

[75] New York State Dep't of Health, Health Advice on Eating Fish You Catch – Seneca County (Seneca Army Depot / Seneca Lake), https://www.health.ny.gov/environmental/outdoors/fish/health_advisories/by_county.htm?county=seneca.

[76] New York State Dep't of Health, Health Advice on Eating Fish You Catch – Oneida County (Griffiss Air Base / Six Mile Creek), https://www.health.ny.gov/environmental/outdoors/fish/health_advisories/by_county.htm?county=oneida.

39. For these reasons, the State's alleged claims and injuries in this action are related to and plausibly derived from, whether in whole or in part, the use or release of 3M MilSpec AFFF. 3M is therefore entitled to remove this case as a whole pursuant to federal officer jurisdiction and can satisfy each of the elements of federal officer jurisdiction as set forth below.

**C. <u>All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.</u>**

*1. <u>3M is a "Person" That "Act[ed] Under" A Federal Officer</u>*

40. The first requirement ("acting under" a federal officer) is satisfied when a "person" assists or helps carry out the duties or tasks of a federal officer. *Watson*, 551 U.S. at 152; *Papp*, 842 F.3d at 812. To begin, 3M (a corporation) is plainly a "person" under the statute.[77] And the phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813; *accord Chevron*, 608 U.S. ----, 146 S. Ct. at 1062–63 (rejecting similar argument as improperly conflating the "acting under" requirement with the requirement that the defendant's conduct must "relat[e] to" an "act under color of federal office"). Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured for the government." *Sawyer*, 860 F.3d at 255.

41. The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination at issue in this action stems in part from MilSpec AFFF, a vital product

[77] *See* 1 U.S.C. § 1 ("the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals").

provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations" and that 3M "contributed considerably to the success of the development of AFFF."[78] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it manufactured AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5; MDL Order 3, at 3–6.

42. In designing, manufacturing, and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, MilSpec AFFF products were subject to various tests by the U.S. Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained

[78] Fulfilling the Roosevelts' Vision, *supra* note 7, at 37.

by the DoD.[79] 3M has satisfied the "acting under" requirement. *See, e.g.*, *Nessel*, 2021 WL 744683, at *3; *Ayo*, 2018 WL 4781145, at *8–9.

### 2. *The "For or Related to Any Act Under Color Of Federal Office" Requirement Is Satisfied.*

43. The second requirement, that the defendant's actions were taken "for *or relating to* any act under color of federal office," 28 U.S.C. § 1442(a)(1) (emphasis added), requires only a "connection that is not 'tenuous, remote, or peripheral'" between the plaintiff's claims or injuries and the defendant's acts undertaken at the direction of a federal officer. *Chevron*, 608 U.S. ----, 146 S. Ct. at 1061. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. Given that the phrase "'relating to' sweeps broadly," and is satisfied by even an "indirect" connection, "a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct." *Chevron*, 608 U.S. ----, 146 S. Ct. at 1060; *see also id.* at 1062 (finding this factor satisfied notwithstanding that the defendant's federal contract did not "expressly direct or invite" the challenged conduct). To meet this requirement, "there need be only *a connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258; *Papp*, 842 F.3d at 813; *Isaacson*, 517 F.3d at 137–38 (explaining that it is sufficient if the act that allegedly caused the plaintiff's injuries occurred while the defendant was performing its official duties).

44. Here, the alleged PFAS contamination of natural resources and property that is the subject of the State's claims, and for which the State seeks recovery, plausibly stems (at least in part) from 3M's MilSpec AFFF—which was designed and manufactured according to DoD military specifications, and which has been used, stored, and/or released at military facilities (and

[79] *See* DoD, SD-6, *supra* note 10, at 1.

elsewhere) in New York. *See supra* ¶¶ 25–39 . As a result, the State's claims against 3M relate to acts—including the design, manufacture, and sale of MilSpec AFFF—taken under color of federal office. *See Maine*, 159 F.4th at 138–39 (because "[r]esolution of Maine's Complaint" would require assessing AFFF contamination, 3M demonstrated a colorable federal defense and thus satisfied the "acting under" requirement); *Maryland*, 130 F.4th at 391 (relating-to element satisfied where 3M "plausibly alleged that PFAS intermingled to the point that it is impossible to identify their source," such that MilSpec AFFF "contributed to at least" part of the alleged contamination); *Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, 2019 WL 2807266, at *3 (relating-to element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . . for which the U.S. military imposes MilSpec standards"); MDL Order 2, at 5 (relating-to element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same).

45. It is immaterial that the State does not expressly allege that the alleged PFAS contamination for which it seeks recovery resulted from the use or release of MilSpec AFFF. Courts "credit plausibly Defendants' theory of the case when determining whether" the relating-to prong is satisfied. *Isaacson*, 517 F.3d at 137; *see also Maine*, 159 F.4th at 138 ("We must credit 3M's theory that PFAS contamination from sources for which 3M admittedly has a federal contractor defense has commingled with and so has become in[di]visible with the PFAS contamination in natural resources and property which are broadly alleged in Maine's statewide non-AFFF Complaint."); *Maryland*, 130 F.4th at 389; *Puerto Rico v. Express Scripts, Inc.*, 119

F.4th 174, 192 (1st Cir. 2024); *Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

46. As averred in this Notice of Removal, the alleged injuries plausibly arise at least in part from alleged exposure to MilSpec AFFF. Accordingly, the State's claims are "for or relating to" 3M's actions under color of federal office (28 U.S.C. § 1442(a)(1)), and 3M is entitled to remove this case as a whole pursuant to § 1442(a)(1). *See, e.g.*, *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020) ("[I]t is enough for . . . removal that at least some of the pollution arose from the federal acts."); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1084 n.6 (6th Cir. 2010) ("[S]ection 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.").

***3. The "Colorable Federal Defense" Requirement Is Satisfied.***

47. The third requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense under *Boyle*, 487 U.S. at 512, as multiple federal appellate courts have confirmed in similar cases brought by state attorneys general.

48. At the removal stage, a defendant "need not virtually win his case." *Cuomo*, 771 F.3d at 115 (cleaned up). Rather, a defendant need only show that its defense is "colorable," meaning that the "defense is sufficient to assure the federal court that it has jurisdiction to adjudicate the case." *Id.* (internal quotations omitted). "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted); *see also Papp*, 842 F.3d at 815 ("A defendant 'need not win his case before he can have it removed.") (internal quotations omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116. Moreover, "this inquiry is

undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [its] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116(citation omitted); *see also Maine*, 159 F.4th at 138 ("We must credit 3M's theory" that the complained of PFAS contamination included "contamination from sources for which 3M admittedly has a federal contractor defense.").

49. Here, Plaintiff seeks to impose liability and seeks relief under state law for alleged PFAS contamination, including PFAS contamination stemming from 3M's manufacture and sale of MilSpec AFFF. *Boyle* displaces state law where, as here, "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512.

50. 3M has pleaded the elements of a plausible government contractor defense for purposes of removal. The requirement of "reasonably precise specifications" can be met by allegations showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.[80] Those

[80] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 8, supra.

specifications are "reasonably precise," including in requiring the use of PFAS.[81] In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

51. With respect to the second requirement, 3M's products have appeared on the DoD Qualified Products List,[82] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

52. Regarding the third requirement, the U.S. government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may

[81] As noted earlier, until 2019, the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that enable AFFF to meet the performance requirements of the specification.

[82] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[83] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[84] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[85] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[86] In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[87] More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-

---

[83] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

[84] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[85] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[86] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-2 (D.S.C.)).

[87] *See* EPA, Revised Draft Hazard Assessment, *supra* note 83.

based fires."[88] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants,"[89] and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[90] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of [PFAS]-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water").

53. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

---

88 DoD, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

89 MIL-PRF-24385F(4) § 3.2 (2020).

90 *Id.* § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

54. 3M's use of PFAS in MilSpec AFFF was "governed by rigorous specifications administered by the Department of Defense." *Maryland*, 130 F.4th at 385. By seeking to impose liability on 3M for alleged injuries to the State that were caused at least in part by 3M's compliance with military specifications, the State is attempting to use state law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

55. The MDL Court, based on an extensive record, has found that the government contractor defense asserted by 3M and other AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues necessarily is "colorable." *See, e.g., In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2026 WL 883873, at *3–4 (D.S.C. Mar. 31, 2026) (denying remand motions and rejecting argument that 3M's government contractor defense related to the use or release of its MilSpec AFFF was not colorable).

56. Accordingly, 3M is entitled to remove this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

WHEREFORE, 3M hereby removes this action from the Supreme Court of the State of New York, County of Albany, to this Court.

Dated: July 20, 2026

Respectfully submitted,

By: _/s/ Allison N. Douglis_
Allison N. Douglis
N.D.N.Y. Bar. No. 704713
Joanna Wright (motion for admission forthcoming)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Phone: 212-891-1600
Fax: 212-891-1699
adouglis@jenner.com
jwright@jenner.com

Daniel L. Ring (motion for admission forthcoming)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Phone: 312-222-9350
Fax: 312-527-0484
DRing@jenner.com

*Counsel for 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing by mail and/or electronic mail to the following as indicated below:

**By Mail:**

Jennifer C. Simon
Kyle Burns
Sabita Krishnan
Assistant Attorney General
Environmental Protection Bureau
Office of the New York Attorney General
28 Liberty Street, 19th Floor
New York, New York 10005

Brendan McGrath
Assistant Attorney General
Environmental Protection Bureau
Office of the New York Attorney General
The Capitol
Albany, New York 12224

***Counsel for Plaintiffs***

EIDP, INC.
The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

***Defendant***

THE CHEMOURS COMPANY, INC.
The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

***Defendant***

THE CHEMOURS COMPANY FC, LLC
The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

***Defendant***

CORTEVA, INC.
The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

***Defendant***

DUPONT DE NEMOURS, INC.
The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

***Defendant***

Dated: July 20, 2026

By: *<u>/s/ Allison N. Douglis</u>*
Allison N. Douglis